Bradley Joseph HUTCHISON, Plaintiff/Appellant,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION and Maczuk Industries, a Missouri Corporation, Defendants/Respondents.

No. 74220.

Missouri Court of Appeals, Eastern District, Southern Division.

July 13, 1999.

Stephen C. Wilson, Cape Girardeau, for appellant.

Steven J. Hughes, St. Louis, John Coenig, for respondent.

KENT E. KAROHL, Judge.

Bradley Hutchison (Plaintiff) filed a personal injury suit against the Missouri Highway and Transportation Commission (Commission) and Maczuk Industries, Inc. (Maczuk). He sustained injuries when he drove his automobile into the rear of an escort vehicle that was following and working in connection with a spraying rig while northbound on Interstate Highway 55 in Cape Girardeau County. A jury found Plaintiff 95% at fault, defendant Commission 5% at fault, and defendant Maczuk 0% at fault. It assessed Plaintiff's damages at $25,000. The court entered a judgment in favor of Plaintiff and against the Commission in the amount of $0.00 after finding the Commission was entitled to a setoff in the amount of $25,000, the sum paid to Plaintiff in a settlement with a former co-defendant. Plaintiff appeals, claiming instructional errors and errors in admission of evidence offered by the Commission. We affirm.

On July 25, 1995, former co-defendant, Janet Keesee, was driving an escort vehicle northbound on Interstate Highway 55. She was traveling approximately 6 miles per hour, partly on the shoulder and partly in the passing lane. She was following a vehicle rigged to spray a weed killer on Johnson grass on the highway median. The Commission contracted with Maczuk to do the spraying. Maczuk sub-contracted with Robert Wiggins to perform spraying operations for the State of Missouri. The spray rig was provided by Maczuk. The escort vehicle belonged to Robert Wiggins. Janet Keesee operated it as an accommodation for Mr. Wiggins. She was a friend, not an employee. Plaintiff was driving northbound in a pick-up truck. After passing a tractor-trailer truck in the left lane, he had room to return, but did not return, to the right hand lane before striking the escort vehicle. He had very little recollection of the events before and at the time of the collision. His most serious injury was a fracture of the left leg. The accident occurred at approximately 2:00 in the afternoon on a clear and sunny day.

▮ Plaintiff first argues the court erred in submitting Instruction No. 10, which defined the term negligence for Plaintiff and for defendant Maczuk. The jury was instructed to consider the claim of Plaintiff's negligence in terms of the highest degree of care and Maczuk's negligence in terms of ordinary care. Plaintiff did not preserve this assignment of error because it was not included in his motion for new trial.

▮ We review this point as a matter of plain error because it was not preserved. We find no error, plain or otherwise. We

conclude Plaintiff's allegations of negligence by Maczuk were not directed at a breach of duty involving the operation of a motor vehicle. Rather, they are directed at a failure to provide adequate warning lights or signs. Janet Keesee was not operating the escort vehicle as an agent of Maczuk. Her duty of highest degree of care differed from the duty owed by Maczuk. Plaintiff made the distinction when he offered and the court gave a verdict directing instruction on the claim against Maczuk on the basis of: (1) a failure to provide a lighted advance warning arrow panel on the escort vehicle, or (2) provide an attenuator on the escort vehicle. The instruction submitted Plaintiff's theory of Maczuk's negligence in terms other than the operation of a motor vehicle. We conclude that this claim of error fails to satisfy the requirements of plain error. Point denied.

■ Plaintiff's second claim is the court erred in submitting Maczuk's comparative negligence instruction because the evidence did not support one of two disjunctive submissions. This instruction was submitted without objection and the claim of error was not included in Plaintiff's motion for new trial. The claim of error was waived. Rule 70.03; Rule 78.07; *Lohmann v. Norfolk & Western Railway Company*, 948 S.W.2d 659, 666–667 (Mo. App. W.D.1997). Point denied.

■ Plaintiff next argues that the court erred in reading two comparative fault instructions, one for each defendant. There is no dispute that the defendants are entitled to only one comparative fault instruction. *Cornell v. Texaco Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986). For several reasons, this claim of error is without merit. First, during the instruction conference, the court announced that it would read two comparative fault instructions, No. 7 and No. 9. Plaintiff made no objection. After reading Instructions Nos. 2–8, including the comparative fault Instruction No. 7, the court called a conference at the bench. It informed the attorneys that he had concluded he would err if he read two comparative fault instructions. The court proposed withdrawal of Instruction No. 7 and instructed the jury not to consider it. He then asked Plaintiff's counsel for his thoughts. Counsel replied, "[y]our Honor, I think it's the best we can do at this point, but I don't want to waive anything. But that's fine." The court then followed his proposal by withdrawing Instruction No. 7 and submitting only Instruction No. 9. The result was the submission of only one comparative fault instruction. We find no violation of *Cornell v. Texaco, Inc.* The learned judge effectively cured any potential error. *Stucker v. Rose*, 949 S.W.2d 235, 238 (Mo.App. S.D. 1997).

Second, this assignment of error was not presented by objection during the instruction conference and was not mentioned in the motion for new trial. The point was waived. Rule 70.03. Third, we find no demonstrated prejudice resulted from the incident. Point denied.

■ Plaintiff's fourth point argues the court abused its discretion in allowing an in-court demonstration of flashing warning lights on the escort vehicle because the conditions in the courtroom were substantially different than at the scene of the collision. The exhibits, identified as L–1 and L–2, were identical to those struck by Plaintiff. We reject this claim of error for several reasons. First, Plaintiff was the first to mention the exhibits as evidence. He mentioned them in his opening statement. He cannot now complain that the court erred in admitting the exhibits and allowing the demonstration where there was an explanation of the differences in circumstances. *Johnson v. Moore*, 931 S.W.2d 191, 195 (Mo.App. E.D.1996).

Second, in Plaintiff's case-in-chief, the court permitted the jury a "view" in the courthouse parking lot of lights, including type "B" rotating lights, in an operational mode on a truck. Plaintiff told the jury that the demonstration was "similar to that

on the—you see on these exhibits L–1 and L–2 [the exhibits now contested]." Thus, the court permitted Plaintiff to use demonstrative evidence, which incorporated the in-court demonstration evidence. We find no abuse of discretion in admitting Commission's exhibits where Plaintiff first made reference to the exhibits, and was allowed an outside demonstration, which permitted the jury to decide relevant issues without undue influence by conditions in the courtroom compared to conditions at the time of the collision. The court did not abuse its discretion. *Wellman v. Wehmeyer*, 965 S.W.2d 348, 351 (Mo.App. E.D. 1998).

Plaintiff's last point contends the court erred in allowing Steven Hoerning, an employee of the Commission, to testify over objection based upon a violation of discovery. Steven Hoerning is a senior traffic studies engineer employed by the Commission. The Commission did not disclose Mr. Hoerning as an expert. Plaintiff contends Mr. Hoerning gave opinion testimony, and, therefore, was permitted to testify over objection as an expert. The Commission responds that Mr. Hoerning was a fact witness and offered no opinion testimony. The subject of his testimony was two-fold. At the request of the Commission counsel, Mr. Hoerning researched data contained in the records of the Commission. Originally, he testified based on his calculations from the data that 57,000 vehicles passed by the spray rig as "a weighted daily average for the hours worked." He subsequently determined that this was a monthly figure; thus, 3500 vehicles passed the spraying operation on the day of the collision. He also testified that the records of the Commission indicated that the spraying operation was performed on two lane highways 85% of the work time and on four lane highways 15% of the work time.

■ We conclude that this testimony was not opinion testimony. Further, Plaintiff tried the case on the theory that defendants were negligent in failing to warn. Mr. Hoerning's testimony supported Plaintiff's theory by imposing a greater responsibility to warn because of heavy traffic. In fact, Plaintiff argued that there was a lot of traffic on the highway. We find no prejudice in admitting factual testimony on traffic conditions calculated on the basis of data in Commission files. *Around the World Importing, Inc. v. Mercantile Trust Co.*, 795 S.W.2d 85, 89 (Mo. App.1990). Point denied.

We affirm.

ROBERT G. DOWD, Jr., C.J. and RICHARD B. TEITELMAN, J. concur.