# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1904

_____

Douglas Wood and Carolyn Wood,     *
                                     *

           Appellants,     *

                                     *    Appeal from the United States

    v.                            *    District Court for the Eastern

                                     *    District of Missouri.

Foremost Insurance Company,     *

                                     *

           Appellee.      *

_____

Submitted: October 19, 2006
Filed: December 28, 2006

_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

A tornado damaged Douglas and Carolyn Wood's roof. They made a claim under their homeowner's policy. The Woods contend that Foremost Insurance Company did not promptly settle. They seek compensation for damage to their property; penalties and attorney's fees under the Vexatious Refusal to Pay Claim statute; damages for injuries suffered by Mr. Wood when he fell from the roof while trying to repair it; and interest. The district court granted summary judgment to Foremost. The Woods appeal.

## I.

After the tornado on May 6, 2003, the Woods immediately filed a claim. On May 17, a roofing company estimated repairs at $7,753. The Woods say they promptly forwarded the estimate to Foremost, which it refused. Foremost denies receiving a written estimate until November 4; the Woods claim that they thrice submitted the estimate to Foremost after the initial refusal.

Foremost inspected the Woods' property on May 20, and delivered a check for $2,722 on May 21. The Woods told Foremost that it had not satisfied the policy. On June 17, Foremost paid an additional $1,267. With the roof still damaged and snow forecast, on November 23 Mr. Wood was injured when he fell from the roof while laying a tarp. Foremost inspected the roof on November 24, and sent another $3,338. On January 14, 2004, Foremost inspected the home's interior, and two weeks later paid an additional $4,530. After three inspections and four payments over eight months, the Woods' claim was settled (minus depreciation and the deductible).

## II.

This court reviews de novo a grant of summary judgment. *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1117 (8th Cir. 2006). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. **Fed. R. Civ. P. 56(c)**. The evidence is viewed most favorably to the nonmoving party. *Hitchcock v. FedEx Ground Package Sys., Inc.*, 442 F.3d 1104, 1106 (8th Cir. 2006).

## III.

The insurance policy reads, "We [Foremost] will make settlement within 30 days after we receive an acceptable proof of loss from you and the amount of loss is

determined as provided in the policy."  The policy does not define an "acceptable proof of loss," and thus is ambiguous as to when payment was due.  When interpreting an insurance policy, Missouri courts follow the principle of *contra proferentem*, and construe any ambiguity against the insurer.  *See* **Krombach v. Mayflower Ins. Co.**, 827 S.W.2d 208, 210 (Mo. banc 1992).

Mr. Wood says he submitted an estimate to Foremost on May 20, and three times thereafter.  Foremost denies receiving a written estimate from the Woods until November 4.  For purposes of summary judgment, this court assumes that Foremost received an estimate from the Woods on May 20.  Equally, any ambiguity as to an "acceptable proof of loss" is resolved against Foremost.  Thus, a reasonable jury could find that Foremost was obligated to settle within 30 days after May 20 – which did not happen.   A reasonable jury could find that Foremost breached the policy.

Foremost emphasizes that the Woods' claim is now settled, with full compensation for all damages (including mold, corrosion, and water damage to the home's interior).  This argument ignores that the Woods also seek damages under the Vexatious Refusal to Pay Claim statute, sections 375.296 and 375.420 RSMo.  If an insurance company refuses to pay a claim "without reasonable cause or excuse," then a jury may award "damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars . . . ."  **Section 375.420 RSMo**.  The statute also allows interest and attorney's fees.  *Id.*  Viewing the facts most favorably to the Woods, a reasonable jury could find Foremost liable under the Vexatious Refusal statute.  *See* **Dhyne v. State Farm Fire & Cas. Co.**, 188 S.W.3d 454, 458-59 (Mo. banc 2006) (upholding a jury verdict imposing liability under this statute after a three-month delay by the insurance company).

IV.

Before Foremost made its last two payments, Douglas Wood was injured when he fell from the roof while trying to lay a tarp in anticipation of a snowfall. The Woods seek compensation for his medical bills, lost income, physical and emotional pain, and for Mrs. Wood's loss of consortium. The policy does not cover personal injury claims.

In Missouri, recovery "by the insured against the insurance company for the policy benefit . . . is limited to that provided by the law of contract plus, if section 375.420 applies, the enhancements provided by the statute." *See Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 68 (Mo. banc 2000). "[A]n insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim for vexatious refusal to pay." *Id.* at 69.

The Woods' personal injury claim is limited by the law of contract in Missouri. Generally, only reasonably foreseeable damages are recoverable in a contract case. *See Kansas City Bridge Co. v. Kansas City Structural Steel Co.*, 317 S.W.2d 370, 381 (Mo. 1958).

According to the Woods, their injuries were reasonably foreseeable when the policy was issued. In addition to claiming that Foremost knew their difficult financial position, the Woods invoke the policy language: "If you have a loss, you must protect your dwelling, other structures or personal property from any further damage. If you fail to do so, any further damage will not be insured by this policy." Accompanying Foremost's checks was a warning to "cash this check promptly and use its proceeds to repair your damaged property," or there will be no coverage for "any additional damage caused by your failure to repair or for unreasonably delayed repairs."

The Woods cite no Missouri authority to support their argument that Mr. Wood's fall was reasonably foreseeable. The most apposite precedent is *Bassett v. Federal Kemper Insurance Co.*, 565 S.W.2d 823 (Mo. App. 1978). In *Bassett*, the insurance company vexatiously refused paying a claim by retroactively cancelling the policy. The insured could not pay the repair shop, which refused to release the damaged car. The insured sued under the Vexatious Refusal statute for, among other things, $11 in replevin costs and $56 in lost wages. The Missouri Court of Appeals rejected recovery for these damages, holding: "The statute, being penal in nature, must be strictly construed . . . The statutory provision necessarily excludes other consequential or collateral damages which do not arise under the policy." *Id.* at 827. By this rule, the Woods may not recover for their personal injuries – which are damages not arising under the policy.

The Woods invoke at length the rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145, 151 (Ex. 1854):

> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.

The Missouri Supreme Court says that *Hadley* excludes "accidental" losses. "Damages for breaches of contract are only those which are incidental to, and directly caused by, the breach, and may reasonably be supposed to have entered into the contemplation of the parties and not speculative profits or *accidental* or consequential losses, or the loss of a fancied good bargain." *Weber Implement Co. v. Acme Harvesting Mach. Co.*, 187 S.W. 874, 876 (Mo. 1916) (emphasis added); *see also United Iron Works, Inc. v. Twin City Ice & Creamery Co.*, 295 S.W. 109, 113 (Mo.

banc 1927) (*Hadley* does not cover "speculative profits, or accidental or consequential losses").

Missouri insurance law uses a dictionary definition of "accident": "An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned or unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by accident." **West v. Jacobs**, 790 S.W.2d 475, 477 (Mo. App. 1990); *see also* **Soukop v. Employers' Liab. Assurance Corp., Ltd.**, 108 S.W.2d 86, 91 (Mo. banc 1937) (defining "accident" in similar terms); *see generally* JUDGE ALMON H. MAUS, 30 MISSOURI PRACTICE: INSURANCE LAW AND PRACTICE § 7.16 (1997).

Mr. Wood's fall was an accident. It was not foreseen by the parties when the contract was formed, in light of the *Bassett* case and Missouri's modified *Hadley* rule. Under the law of contract in Missouri, the Woods may not recover for their personal injuries.

V.

The grant of summary judgment is reversed as to the non-personal-injury claims. As to the personal injury claims, summary judgment is affirmed.

_____